UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHARLES STENSON,

                        Petitioner,

             -against-                            11 Civ. 5431 (RPP)

PHILLIP HEATH, Superintendent,               **OPINION AND ORDER**
Sing Sing Correctional Facility,

                       Respondent.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      Charles Stenson (the "Petitioner") brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254"), challenging a judgment of conviction entered on May 28, 2008 in the New York Supreme Court, New York County. Petitioner was convicted, after trial, of three counts of Burglary in the Second Degree (N.Y. Penal Law § 140.52(2)), one count of Criminal Mischief in the Second Degree (N.Y. Penal Law § 145.10), and two counts of Criminal Mischief in the Fourth Degree (N.Y. Penal Law § 145.00). Petitioner was sentenced to determinate terms of four years' imprisonment on the Second Degree Burglary counts, an indeterminate term of one and one-third to four years' imprisonment on the Second Degree Criminal Mischief count, and a determinate term of one year imprisonment on the Fourth Degree Criminal Mischief counts, all to run concurrently with each other, but consecutively to a term of imprisonment on a unrelated conviction.

                        **I.    BACKGROUND**

**A.    Underlying Facts**[1]

      **1.    Burglary of Wine Lover's Store**

---
[1] The following facts were established at the Petitioner's trial which took place from April 1 to April 7, 2008.

1

In the early morning hours of May 19, 2005, Wine Lover's Store, a retail wine store located at 1752 Second Avenue in Manhattan, was burglarized. (See Trial Tr. ("Tr.") at 37, 72.) Barbara Phillips ("Phillips"), the storeowner, testified at trial that her former assistant manager closed the store on May 18, 2005 and followed the business's standard security procedures for securing the premises. (Id. at 49-50.)

On May 19, 2005 at 11:00 a.m., Phillips opened Wine Lover's Store and customarily reviewed the surveillance videos from the previous night. (Id. at 50-51.) The surveillance tapes showed that after midnight, a man wearing a tan hat, tan jacket, long white t-shirt, tan sweatpants, tan boots, and at least one earring entered an open door in the basement storage area of the store, and moved around the store. (See Pet'r's Exs. in Supp. of Pet. for Writ of Habeas Corpus ("Pet'r's Exs."), Ex. A-1, A-4.) The tape captures the man's body movements and his face is exposed several times. (See Pet'r's Ex. A-1, A-4) Phillips stated that she had never seen the man before. (Tr. at 66-67.) After reviewing the tapes, Phillips inspected the premises, and found the lock to the front door damaged, the lock of the door that led to the basement damaged, and the metal basement doors damaged with a large gap in the center of the door near the lock. (Id. at 54-55, 72-73.) No property had been taken during the burglary. (Id. at 73-74.) Phillips spent $3,000 to repair the door and the lock. (Id. at 56.)

    2.    **Burglary of Garcie's Café**

Early in the morning of October 30, 2005, Garcie's Café, a restaurant located at 1530 York Avenue at 81st Street in Manhattan, was burglarized. (Id. at 150-51.) Keith Kreatsoulas ("Kreatsoulas"), the restaurant owner, arrived at the store on October 29, 2005 at around noon and left at about 10:00 p.m. (Id. at 161.) Kreatsoulas returned to the restaurant at approximately 1:30 a.m. on October 30, 2005 to retrieve his keys, which he believed he had left in a drawer

2

underneath the cash register. (Id. at 161-62.)  Upon entering the restaurant, Kreatsoulas noticed that a ceiling tile that held the restaurant's surveillance camera had been "pulled off the wall," and that a chair had been positioned underneath the area where the ceiling tile had once been. (Id. at 164.)  Kreatsoulas looked in the drawer underneath the cash register, but was unable to locate his keys. (Id. at 162-63.)

Kreatsoulas did not immediately call the police, but waited until the start of the work day to ask his employees if they knew what had happen to the ceiling tile. (Id. at 164.)  After questioning his employees–who claimed to know nothing about the fallen ceiling tile– Kreatsoulas called the police, and proceeded to review the restaurant's surveillance video tapes. (Id. at 164-67.)  Surveillance video taken from a camera located over the cash register shows a man wearing a brimmed cap and jacket going through the drawers under and near the restaurant's cash register, and reveals the man's body movements. (See Pet'r's Ex. A-3.)  A video from a second surveillance camera, located in the basement prep area, shows the same man, wearing a dark colored jacket, a dark-colored baseball cap, dark-colored pants, and earrings, moving around the area.  (See Pet'r's Exs. A-3, A-6.)  The video captures his body movements and his face is exposed briefly. (See Pet'r's Exs. A-3, A-6)  Kreatsoulas had never before seen the man in the surveillance video. (Tr. at 171.)  Kreatsoulas later observed that one of the basement doors had been pried open, and that the deadbolt lock was broken. (Id. at 172-73.)  No property was taken. (Id. at 174-75.)  Kreatsoulas spent $250 to repair the lock. (Id. at 173.)

   3.   **Burglary of Danny's & Eddie's Bar**

Early in the morning on December 23, 2006, Danny's & Eddie's Bar, located at 1643 First Avenue between 85th and 86th Streets in Manhattan, was burglarized. (Id. at 99-100.)

Jennifer Rubin ("Rubin"), the store manager, worked at the store from 1:00 p.m. on December 22, 2006 until between 3:00 a.m. and 4:00 a.m. the next morning. (Id. at 111.) Rubin returned to the bar on December 23, 2006 between noon and 1:00 p.m. (Id. at 112.) When Rubin went to her basement office, she discovered that the liquor room door was wide open. (Id.) She found that the door lock was damaged and that the latch that hooked the lock was bent. (Id. at 114.) Rubin proceeded to call the police and reviewed the bar's surveillance videos. (Id. at 114-15.)

The surveillance video shows a man attempting to force open a door in the basement area, using a tool to break the door latch. (See Pet'r's Ex. A-2.) The man is fair-skinned and is wearing a light-colored baseball cap, long white t-shirt, dark colored or black jacket, and light colored pants. (See Pet'r's Ex. A-2, A-5.) The video shows the man's body movements, and the man's face can be seen on several occasions. (See Pet'r's Ex. A-2.) Rubin had never seen the man before. (Tr. at 122-23, 128.) Nothing was taken, but Rubin spent $15 to repair the lock. (Id. at 128-29.)

   **4.** **Petitioner's Arrest**

At trial, Officer Christian Meroni ("Officer Meroni") of the New York City Police Department testified that early in the morning of December 24, 2006 (the day after the burglary of Danny's and Eddies's Bar) he arrested Petitioner on an unrelated charge. (Id. at 81-82.) Following Petitioner's arrest, police matched Petitioner's image with the surveillance videos from the three burglaries that took place on the Upper Eastside of Manhattan: the Wine Lover's Store, Garcie's Café, and Danny's & Eddie's Bar. (See Gov't's Mem. in Opp. to the Pet. for a Writ of Habeas Corpus ("Gov't's Mem.") at 1.) Officer Meroni stated that Petitioner was wearing a tan pair of sweat pants, tan boots, a tan hat, a black jacket, a white T-shirt, and a pair

of earrings at the time of his arrest. (Id. at 83-87.) At trial, the government presented pictures of the Petitioner's face and clothes at the time of his arrest to the jury. (Pet'r's Exs. A-7, A-8, A-9.)

**B.      Procedural History**

      **1.      State Court Proceedings**

By Indictment Number 851/07, filed on February 26, 2007, a New York County Grand Jury charged Petitioner with five counts of Burglary in the Second Degree (N.Y. Penal Law § 140.52(2)), one count of Criminal Mischief in the Second Degree (N.Y. Penal Law § 145.10), two counts of Criminal Mischief in the Fourth Degree (N.Y. Penal Law § 145.00), one count of Petit Larceny (N.Y. Penal Law § 155.25), and one count of Grand Larceny in the Third Degree (N.Y. Penal Law § 155.35). On April 1, 2008, a jury trial commenced before Justice Arlene Silverman in New York Supreme Court. Petitioner proceeded pro se, with the aid of a legal adviser. (Id.) During jury selection, the prosecution advised the court that it would not be presenting evidence concerning the Grand Larceny count and two of the Second Degree Burglary counts. (Voir Dire Tr. at 66-67.)

At trial, the only evidence placing Petitioner at the scene of all three burglaries was the surveillance video taken from each of the establishments. The Petitioner presented no evidence at trial. On April 7, 2008, the jury found Petitioner guilty of three counts of Burglary in the Second Degree (N.Y. Penal Law § 140.52(2)), one count of Criminal Mischief in the Second Degree (N.Y. Penal Law § 145.10), and two counts of Criminal Mischief in the Fourth Degree (N.Y. Penal Law § 145.00). (Tr. at 245-55.) The jury found Petitioner not guilty of Petit Larceny (N.Y. Penal Law § 155.25). (Id. at 255.) Petitioner was sentenced on May 28, 2008. (Sentence Tr. at 1-10.)

On June 30, 2009, Petitioner, by his counsel, Richard M. Greenberg, Esq. ("Mr. Greenberg"), filed a brief in the Appellate Division, First Department, arguing that: 1) the proffered trial evidence was legally insufficient and the verdict was against the weight of the evidence; 2) the prosecutor removed the issue of identity from the grand jury's consideration and failed to instruct the grand jury regarding identification; and 3) Petitioner's sentence should be modified to run concurrently with his prior conviction. (See Decl. of Thomas B. Litsky, Esq., in Opp. to Pet. for a Writ of Habeas Corpus, Ex. A at 23, 33, 41.)  On December 1, 2009, the Appellate Division, First Department, unanimously affirmed Petitioner's conviction in a summary opinion which reads in full:

> The verdict was based on legally sufficient evidence and was not against the weight of the evidence (see People v. Danielson, 9 NY3d 342, 348-349 [2007]). There is no basis for disturbing the jury's determinations that defendant is the person depicted in a series of surveillance videotapes.
>
> Under the exacting standard that must be satisfied before the extraordinary remedy of dismissal of the indictment is warranted (see People v. Darby, 75 NY3d 449, 455 [1990]), we find no impairment of the integrity of the grand jury proceeding.  The People's questioning of witnesses and instructions to the grand jury were appropriate, and any defects did not warrant dismissal.
>
> We perceive no basis for reducing the sentence or directing that it be served concurrently with the sentence for defendant's other convictions.

People v. Stenson, 68 A.D.3d 418 (N.Y. App. Div. 2009).

On December 30, 2009, Petitioner sought leave to appeal to the New York Court of Appeals. (See Pet'r's Ex. B-5.)  On May 11, 2010, the New York Court of Appeals denied Petitioner leave to appeal. See People v. Stenson, 929 N.E.2d 1016 (N.Y. 2010).

### 2. Federal Court Proceeding

On August 4, 2011, Petitioner, by his counsel Mr. Greenberg, filed the instant petition, arguing that:

> Charles Stenson is in custody in violation of the Constitution because the only evidence at his trial–three poor quality surveillance videotapes, the still photographs taken therefrom, and photographs of Mr. Stenson and the clothing he was wearing at the time of arrest in an unrelated matter–was insufficient as a matter of law to establish that he was the person seen on all three poor quality videos committing three separate burglaries.

(Pet'r's Mem. in Supp. of Pet. for Writ of Habeas Corpus ("Pet'r's Mem.") at 15.) Petitioner further argues that "with respect to this federal constitutional claim, the state court 'adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" (Id. at 16-17 (citing § 2254(d)(1)).)[2]  On March 19, 2012, Respondent filed its opposition papers, and on April 17, 2012, Petitioner filed a reply.

## II.     LEGAL STANDARD[3]

Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application of</u>, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2) (emphasis added).  Federal courts are to remain "highly deferential" to state court rulings, which must receive "the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (citing Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

---

[2] The Appellate Division grand jury determinations are not raised in this petition.
[3] Petitioner has exhausted all remedies in state court and has filed this petition in a timely manner pursuant to § 2254.

To satisfy the "contrary to" clause, a petitioner must demonstrate that the state court: 1) "arrived at a conclusion opposite to that reached by the Supreme Court on a question of law," or 2) that "the state court [was] confront[ed] [with] facts that [were] materially indistinguishable from . . . relevant Supreme Court precedent and arrive[d]" at an opposite result." William v. Taylor, 529 U.S. 362, 405 (2000).  To establish that the state court made an "unreasonable application" of Supreme Court precedent, the Petitioner must show that the: 1) "state court identif[ied] the correct governing legal rule from [Supreme Court] cases, but unreasonably appli[ed] it to the facts of the particular state prisoner's case," or 2) that the state court either unreasonably extended a Supreme Court legal precedent to a new context where it should not apply, or did not extend it to a new context where it should have applied. Id. at 407.  The Petitioner must show that the state court's decision was "objectively unreasonable" to obtain relief under the "unreasonable application" clause. Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

Section 2254(d)(2) requires federal courts to apply a "presumption of correctness" to factual determinations made by state courts, and the Petitioner must overcome that presumption by "clear and convincing evidence." See § 2254(d)(2); Leka v. Portuondo, 257 F.3d 89, 98 (2d Cir. 2001).  Additionally, "[i]n reviewing a claim that the evidence was insufficient to sustain a defendant's conviction, 'we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessment of the witnesses' credibility.'" United States v. Sabhnani, 559 F.3d 215, 241 (2d Cir. 2010) (quoting United States v. Parkes, 497 F.3d 220, 225 (2d Cir. 2007)).

### III.   DISCUSSION

**A.    Petitioner has not established that the state court decision was "contrary to, or involved an unreasonable application of, clearly establish Federal law, as determined by the Supreme Court of the United States."**

Section 2254(d)(1) states that a Petitioner may receive habeas corpus relief from a state court decision if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." § 2254(d)(1). Here, Petitioner argues that the Appellate Division's decision violated § 2254(d)(1) because his conviction was obtained by proof less than beyond a reasonable doubt. (Pet'r's Mem. at 17, 19.) As discussed infra, however, there was sufficient evidence for a jury to determine, beyond a reasonable doubt, that Petitioner was the man seen in all three surveillance video tapes.

Petitioner has failed to offer any Supreme Court decisions that hold that a person may not be convicted based solely on evidence taken from video surveillance cameras. Absent the existence of "clearly established Federal law, as determined by the Supreme Court," the Appellate Division's rejection of Petitioner's legal sufficiency claim cannot be held to be "contrary to, or involve an unreasonable application" of federal law. Id.; see Carey v. Musladin, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court . . . it cannot be said that the . . . state court's decision was . . . contrary to or an unreasonable application of clearly established federal law.")

**B.   The evidence presented at trial was not insufficient as a matter of law to permit the jury to find that the Petitioner was guilty beyond a reasonable doubt.**

The parties do not dispute that Wine Lover's Store, Garcie's Café, and Danny's & Eddie's Bar were each burglarized. What is in dispute is whether or not the Petitioner is the person seen in the three separate surveillance videotapes. (See Pet'r's Mem. at 28; Gov't's Mem. at 18.) Petitioner contends that the surveillance videotapes were of such poor quality that they alone could not provide sufficient evidence to permit a reasonable jury to find the Petitioner guilty beyond a reasonable doubt. (See Pet'r's Mem. at 17-19.) Respondent contends that the

evidence presented was legally sufficient and that a habeas court must not substitute its own judgment for that of the state court and jury. (Gov't's Mem. at 17-18.)

A federal habeas courts may not overturn a state court decision unless the decision was "objectively unreasonable." Cavazos v. Smith, 132 S. Ct. 2, 3-4 (2011). In Cavazos, the Supreme Court held:

> The opinion of the Court in Jackson v. Virginia, 443 U.S. 307 (1979), makes clear that it is the responsibility of the jury–not the court–to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

Id. at 3-4. As noted, supra, the Appellate Division rejected Petitioner's insufficiency claim finding that: "[t]he verdict was based on legally sufficient evidence and was not against the weight of the evidence" and that there was "no basis for disturbing the jury's determinations that defendant is the person depicted in a series of surveillance videotapes." Stenson, 68 A.D.3d at 418. This Court would only be justified in overturning the decision of the Appellate Division if it determined that the Appellate Division was objectively unreasonable in rejecting Petitioner's appeal. See Cavazos, 132 S. Ct. at 3-4.

"Petitioner bears a 'very heavy burden' in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (quoting Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)). "[E]vidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Cavazos, 132 S. Ct. at 6 (quoting Jackson, 443 U.S. at 319). Additionally, the reviewing court must presume that the "triers of fact resolved any

[factual conflict] in favor of the prosecution, and must defer to that resolution." Id.  The holding of Jackson requires federal habeas courts to show deference to the already deferential standard required of the state appellate courts during review. Id.

At Petitioner's trial, the jury was presented with three surveillance videotapes of three separate burglaries that were committed over a period of approximately twenty months. Notably, there was no witness testimony that independently identified the Petitioner as the man in the surveillance videos.  However, the jury saw a photo taken of the Petitioner's face at the time of his arrest, and viewed the clothing he was wearing at that time.  Furthermore, Petitioner represented himself during trial, providing the jury with an opportunity to observe the Petitioner's body language and posture as he moved around the court room.  After a five-day trial, the jury found the Petitioner guilty.

The court has viewed the surveillance tapes and still photos that were presented at trial and finds that, viewing the evidence in the light most favorable to the prosecution, a reasonable juror could have found that the individual depicted on each of the three tapes was Petitioner. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Jackson, 443 U.S. at 332).  No such extreme malfunction is present in Petitioner's case.  The Appellate Division's decision to reject the Petitioner's appeal was not contrary to established federal law and did not involve an unreasonable application of federal law.  Additionally the Appellate Division was not objectively unreasonable in rejecting Petitioner's legal sufficiency claim.

### IV.   CONCLUSION

For the forgoing reasons, Petitioner's § 2254 petition (ECF No. 3) must be denied. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253.

IT IS SO ORDERED.

Dated: New York, New York
       August 2/, 2012

_____
Robert P. Patterson, Jr.
U.S.D.J.

**Copies of this Opinion and Order were faxed to:**

*Counsel for Petitioner*:
Richard M. Greenberg
Office of the Appellate Defender
11 Park Place
Suite 1601
New York, NY 10007
(212) 402-4100
Fax: (212) 402-4199
Email: rgreenberg@appellatedefender.org

*Counsel for Respondent*:
Thomas Benjamin Litsky
New York State Office of the Attorney General
120 Broadway
New York, NY 10271
(212) 416-6173
Fax: (212) 416-6010
Email: thomas.litsky@ag.ny.gov